UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PETER FRANCIS BANACH,

     Plaintiff,

v.                                                   Case No: 6:15-cv-00478-JSS

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.
_____/

## ORDER

Plaintiff, Peter Francis Banach, seeks judicial review of the denial of his claim for a period of disability and disability insurance benefits ("DIB").  As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the decision is affirmed.

## BACKGROUND

### A.    Procedural Background

Plaintiff filed an application for a period of disability and DIB on March 13, 2012.  (Tr. 15.)  The Commissioner denied Plaintiff's claims both initially and upon reconsideration.  (Tr. 15.)  Plaintiff then requested an administrative hearing.  (Tr. 15.)  Upon Plaintiff's request, the ALJ held a hearing on July 9, 2014 at which Plaintiff appeared and testified.  (Tr. 15, 34-74.)  Following the hearing, on August 22, 2014, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits.  (Tr. 12-27.)  Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied.  (Tr. 1-11.)

Plaintiff then timely filed a complaint with this Court.  (Dkt. 1.)  The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

**B.      Factual Background and the ALJ's Decision**

Plaintiff, who was born on June 5, 1980, claimed disability beginning on May 17, 2010. (Tr. 15, 37.)  Plaintiff graduated from high school and was working on an associate's degree at the time of the administrative hearing.  (Tr. 37-38.)  Plaintiff served in the United States Marine Corps from 2006–2010.  (Tr. 169.)  Plaintiff's past relevant work experience included work as a police officer, motor transport operator, infantryman, security guard, and sprinkler irrigations installer. (Tr. 63.)  Plaintiff alleged disability due to post-traumatic stress disorder ("PTSD"), thoracolumbar spine strain, left/right knee patellae, right ankle problems, shoulder problems, and short term memory loss.  (Tr. 215.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since May 17, 2010.  (Tr. 17.)  After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments:  spine disorder, status post right ankle fracture, obesity, major depressive disorder, and PTSD.  (Tr. 17.) Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 17.)  The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with certain limitations.  (Tr. 20.)  In formulating Plaintiff's RFC, the ALJ considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  (Tr. 20.)

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform his past relevant work. (Tr. 25.) Given Plaintiff's background, RFC, and limitations, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as document preparer, surveillance systems monitor, and table worker. (Tr. 26.) Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled. (Tr. 27.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. *Id.* § 1382c(a)(3)(D).

The Social Security Administration ("SSA"), in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If a claimant is found disabled at any point in the sequential review, further inquiry is unnecessary. *Id.* Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part

404, Subpart P, Appendix 1; and (4) whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience.  *Id.*  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. § 405(g).  Substantial evidence is "'more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam).  The court reviews the Commissioner's decision with deference to the factual findings, however, no such deference is given to the legal conclusions.  *See Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  The Commissioner's conclusions of law are subject to close scrutiny and are not presumed valid.  *Id.*

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal.  *Keeton*, 21 F.3d at 1066.  The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the

correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221

(11th Cir. 2002) (per curiam).

## ANALYSIS

Plaintiff challenges the ALJ's decision on two grounds:

(1)   The ALJ failed to apply the correct legal standards to the medical opinions of record; and

(2)   The ALJ failed to properly consider the decision of the Department of Veterans Affairs ("VA").

For the reasons that follow, neither of these contentions warrant reversal.

### (1)     Whether the ALJ failed to apply the correct legal standards to the medical opinions of record

Medical opinions are statements from physicians and psychologists or other acceptable

medical sources that reflect judgments about the nature and severity of the claimant's impairments,

including the claimant's symptoms, diagnosis and prognosis, the claimant's ability to perform

despite impairments, and the claimant's physical or mental restrictions.  *Winschel v. Comm'r of

Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011) (internal quotation and citation omitted).  The

medical opinions of a treating physician must be given substantial or considerable weight unless

good cause is shown to the contrary.  *Id.* at 1179; *see also* 20 C.F.R. § 404.1527(c)(2).  Good cause

exists when the doctor's opinion was not bolstered by the evidence, the evidence supported a

contrary finding, or the doctor's opinion was conclusory or inconsistent with his or her own

medical records.  *Winschel*, 631 F.3d at 1179.

In addition, the ALJ must state with particularity the weight given to different medical

opinions and the reasons therefor.  *Id.*  However, there is no rigid requirement that the ALJ

specifically refer to every piece of evidence in his or her decision, so long as the decision is not "a

broad rejection" that leaves the court with insufficient information to determine whether the ALJ

considered the claimant's medical condition as a whole.  *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).  To the extent that an ALJ commits an error, the error is harmless if it did not affect the ALJ's ultimate determination.  *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983).

Plaintiff contends that the ALJ erred by not weighing or discussing the opinions of Dr. Ott, Dr. Hunter, Dr. Geddie, and Dr. Bridgewater.  (Dkt. 17 at 15.)  Plaintiff claims that each of these doctors gave opinions supporting "severe mental limitations, needing to use a cane, a shoulder impairment with limitations, etc."  (Dkt. 17 at 15.)

As an initial matter, the ALJ stated that his decision "summarizes the salient evidence of record" but "does not purport to summarize each and every medical encounter."  (Tr. 25.)  The ALJ then stated that "unless otherwise indicated, the views of all treating providers and third parties have been given some weight in this decision."  (Tr. 25.)  Thus, although he may not have specifically referenced Dr. Ott, Dr. Hunter, Dr. Geddie, and Dr. Bridgewater, the ALJ did appear to give their opinions "some weight" and did not completely disregard the opinions, as Plaintiff contends.  *See Dyer*, 395 F.3d at 1211.

Nonetheless, the ALJ did not err by not assigning more specific weight to the opinions of Dr. Ott, Dr. Hunter, and Dr. Geddie.  These doctors were nontreating sources who saw Plaintiff only once to conduct Compensation and Pension ("C&P") examinations in connection with Plaintiff's application to the VA for disability benefits.

Dr. Ott, a licensed clinical psychologist, examined Plaintiff on August 16, 2012.  (Tr. 630-38.)  Dr. Ott noted that Plaintiff was diagnosed with PTSD.  (Tr. 631.)  She indicated that Plaintiff had "[o]ccupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking and/or mood."  (Tr. 633.)  Dr. Ott did not identify any specific limitations related to the PTSD.  (*See* 630-38.)

Dr. Hunter, a licensed clinical psychologist, examined Plaintiff on April 23, 2014.  (Tr. 1007-17.)   Dr. Hunter noted Plaintiff's PTSD diagnosis and stated that Plaintiff had "[o]ccupational and social impairment with reduced reliability and productivity." (Tr. 1009.)  Dr. Hunter opined that Plaintiff's symptoms impaired Plaintiff's ability to work cooperatively and effectively with co-workers, supervisors, and the public to a mild extent.  (Tr. 1016-17.)   She opined that Plaintiff's symptoms also impaired Plaintiff's ability to understand, follow, and retain instructions and to maintain task persistence and pace to a mild extent.  (Tr.  1017.)  She further opined that Plaintiff's symptoms did not impair Plaintiff's ability to communicate effectively in writing, to solve technical or mechanical problems, to arrive at work on time, or to work a regular schedule without excessive absences.  (Tr. 1017.)

Dr. Geddie also examined Plaintiff on April 23, 2014.  (Tr. 1020-29.)  Dr. Geddie noted that Plaintiff had been diagnosed with a thoracolumbar spine (back) condition, specifically, lumbosacral strain. (Tr. 1021.)  Plaintiff reported chronic tightness of his low and mid back.  (Tr. 1022.)   Dr. Geddie found that Plaintiff did not have any functional loss and/or functional impairment of the thoracolumbar spine.  (Tr. 1024.)  Dr. Geddie concluded that that Plaintiff's back condition did not impact his ability to work and did not identify any limitations.  (Tr. 1029.)

Because Dr. Ott, Dr. Hunter, and Dr. Geddie each examined Plaintiff only once, they are considered nontreating sources.  *See* 20 C.F.R. § 404.1402.  As such, the ALJ was not required to give their opinions controlling weight, and his statement that he gave the opinions "some weight" is sufficient.  *See* 20 C.F.R. § 404.1527(c)(2); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987).

Further, the opinions from the nontreating sources are consistent with the RFC and do not indicate more severe limitations than already accounted for in the RFC.  Dr. Ott noted some

occupational deficiencies, but did not identify any limitations.  Dr. Hunter found that Plaintiff's symptoms only mildly impaired his ability to work.  Dr. Geddie opined that Plaintiff's back condition did not impact his ability to work.  Even so, the ALJ accounted for Plaintiff's mental limitations, use of a cane, and shoulder impairment, in the RFC, which restricts Plaintiff to performing simple and unskilled sedentary work, such as a document preparer, surveillance systems monitor, or a table worker.  (Tr. 20, 26.)  Thus, the ALJ did not err by not assigning a specific weight to each nontreating doctor's opinion.  *See Caldwell v. Barnhart*, 261 F. App'x 188, 191 (11th Cir. 2008).

With regard to Dr. Bridgewater, he examined Plaintiff on multiple occasions, and, as such, is considered a treating physician whose opinions are entitled to substantial weight.  The ALJ indicated that he considered these opinions but assigned them only "some weight," and did not articulate good cause for not affording Dr. Bridgewater's opinions substantial or considerable weight.  (Tr. 25.)  Nonetheless, because the error did not affect the ALJ's ultimate determination, it is considered harmless.  *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983).

Dr. Bridgewater first examined Plaintiff on March 10, 2011.  (Tr. 387.)  Dr. Bridgewater noted that Plaintiff had been diagnosed with PTSD and consulted with Plaintiff about a psychotherapy plan.  (Tr. 388.)  Dr. Bridgewater did not identify any specific limitations and noted that Plaintiff had an average IQ and was articulate and organized.  (Tr. 392.)  He noted that Plaintiff's mood was dysthymic but that he did not report any hallucinations or suicidal thoughts. (Tr. 389, 391.)  Plaintiff reported that his schedule would not permit him to regularly attend psychotherapy but requested a referral to a psychiatrist to discuss psychotropic mediations.  (Tr. 393.)

On August 3, 2011, Plaintiff met with Dr. Bridgewater and reported experiencing blackouts and increased PTSD symptoms.  (Tr. 433, 435.)  Over two years later, on September 10, 2013, Plaintiff met again with Dr. Bridgewater and reported that irritability and rage were disrupting his ability to work and that he believed his only option was to "increas[e] the percentage of his SC disability."  (Tr. 844.)  Dr. Bridgewater noted that Plaintiff was "ambivalent towards any type of psychotherapy."  (Tr. 846.)

On October 3, 2013, Dr. Bridgewater assisted Plaintiff in developing a treatment plan, which included applying to a residential PTSD treatment program and considering a domiciliary residential rehabilitation and treatment program.  (Tr. 836-37, 995.)  Dr. Bridgewater did not identify any specific limitations and noted that Plaintiff was alert, denied hallucinations, and had good hygiene, good eye contact, good rapport, average intelligence, and adequate insight and judgment.  (Tr. 836.)

On November 20, 2013, Plaintiff attended a session with Dr. Bridgewater, in which he stated that he was no longer interested in the domiciliary but continued to plan to apply for the PTSD treatment program.  (Tr. 966.)  He reported various financial and legal concerns and agreed to begin weekly therapy sessions.  (Tr. 966.)

Plaintiff reported for psychotherapy sessions with Dr. Bridgewater on March 7 and 14, April 4, 18, and 25, and May 2 and 9, 2014. (Tr. 906, 914, 926, 939, 997, 1000.)  Plaintiff reported a pain level of 8 from his ankles and used a cane to ambulate.  (Tr. 915-16.)  On March 14, 2014, Plaintiff requested a letter from Dr. Bridgewater attesting to Plaintiff's unemployability, and Dr. Bridgewater notified Plaintiff that it was not the policy of the VA Medical Center system for mental health clinic providers to make such determinations.  (Tr. 927.)  Dr. Bridgewater reported

some success in Plaintiff's treatment.  (Tr. 914.)   On May 9, 2014, Plaintiff reported that he believed the therapy was working for him.  (Tr. 997.)

Dr. Bridgewater's findings are consistent with the RFC.  The ALJ found that Plaintiff has the RFC to perform sedentary work with a number of physical and mental limitations.  (Tr. 20.) Specifically, the ALJ determined that Plaintiff would require work that is simple and unskilled or very low semi-skilled in nature.  (Tr. 20.)  Plaintiff is limited to standing and walking for two hours and sitting for six hours and should avoid frequent ascending or descending of stairs and hazards in the workplace.  (Tr. 20.)  The ALJ further noted that Plaintiff

> has non-exertional mental limitations which substantially affect his ability to concentrate upon complex or detailed tasks, but he would remain capable of understanding, remembering and carrying out the job instructions outlined above; responding appropriately to supervision, coworkers and work situations; and dealing with changes in a routine work setting, but he should avoid stressful situations such as working with co-workers in a team; working directly with the public other than co-workers, making few decisions, and using little judgment.

(Tr. 20.)

Dr. Bridgewater's opinions do not contradict the RFC.  He did not specify any limitations, but repeatedly stated that Plaintiff was alert, articulate, organized, and had an average IQ.  He also indicated that Plaintiff was reluctant to regularly attend therapy, but that when he did, his symptoms showed improvement.  Dr. Bridgewater recognized Plaintiff's PTSD diagnosis and symptoms and the ALJ's decision directly accounts for Plaintiff's mental limitations.  Thus, the ALJ's failure to specifically assign substantial weight to Dr. Bridgewater's opinions was harmless, because Dr. Bridgewater's opinions are consistent with the RFC.  *See Caldwell v. Barnhart*, 261 F. App'x 188, 191 (11th Cir. 2008) (finding that the ALJ's failure to state the weight given to a physician's opinions was harmless error because the opinions did not otherwise contradict the ALJ's findings); *see also Tillman v. Comm'r, Soc. Sec. Admin.*, 559 F. App'x 975, 975-76 (11th

Cir. 2014) (recognizing harmless error analysis in the context of an ALJ's failure to address a treating source's opinion and concluding that "when the ALJ's error did not affect its ultimate findings, the error is harmless, and the ALJ's decision will stand"). Accordingly, the ALJ did not fail to apply the correct legal standards to the medical opinions of record.

### (2)      Whether the ALJ failed to properly consider the decision of the VA

Generally, "[t]he findings of disability by another agency, although not binding on the [Commissioner], are entitled to great weight." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1241 (11th Cir. 1983). The Commissioner is "required to evaluate all the evidence in the case record that may have a bearing on [its] determination or decision of disability, including decisions by other governmental and nongovernmental agencies. Therefore, evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered." Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939, at *6 (S.S.A. Aug. 9, 2006); 20 C.F.R. § 404.1512(b)(5). The Commissioner should evaluate evidence used by the other agencies just as it would any other evidence in the record, in accordance with 20 C.F.R. § 404.1527 and SSR 96-2p, 96-5p, and 06-03p. *Id.* at *7. Nonetheless, the Commissioner must make disability determinations based on social security law, not the rules of other agencies. 20 C.F.R. § 404.1504. Further, the Commissioner may assign limited weight to an agency's determination if the agency applies a lower disability standard than that of the Commissioner. *Hacia v. Comm'r of Soc. Sec.*, 601 F. App'x 783, 786 (11th Cir. 2015).

On October 31, 2012, the VA assigned Plaintiff a seventy percent disabling rating for his PTSD and a ten percent disabling rating for his ankle condition. (Tr. 826-27.) Plaintiff's overall

or combined rating was ninety percent.[1]  (Tr. 831.)  Plaintiff contends that the ALJ failed to properly consider the VA's disability decision.

The ALJ, however, did evaluate and consider the VA's decision.  The ALJ found that Plaintiff had severe impairments, including PTSD and status post right ankle fracture, which are the same conditions to which the VA assigned a disability rating.  (Tr. 17.)  The ALJ stated that he reviewed the medical evidence of record from the VA and gave it "some weight."  (Tr. 22.)  But, he noted that "the psychological progress notes from the VA appear somewhat inadequate in scope and content."  (Tr. 22.)

The ALJ "also considered the fact that [Plaintiff] receives VA compensation."  (Tr. 22.)  The ALJ described the VA's process for determining a claimant's disability, including that it is based upon evidence submitted by the claimant, the claimant's medical records, and C&P exam reports.  (Tr. 22.)  The ALJ noted that the VA's system was "disparate from the Social Security Administration disability adjudication system," which requires an in-depth five-step sequential process and review of a variety of medical and non-medical evidence.  (Tr. 15-17, 22.)  *See Hacia*, 601 F. App'x at 786 (citing 20 C.F.R. §§ 404.1520(a), 416.920(a), 404.1512(a)-(c), 416.912(a)-(c)).

The ALJ further stated that, while he accounted for Plaintiff's VA connected disabilities in the RFC, he did "not assign them full weight for the reasons stated elsewhere."  (Tr. 25.)  He again reiterated that the medical evidence of record from the VA as to how Plaintiff's diagnosis of PTSD was achieved was "unclear."  (Tr. 25.)  Thus, it is apparent that the ALJ considered and evaluated the evidence related to the VA's decision.  The ALJ, however, assigned limited weight to the VA's determination, due to the "unclear" and "inadequate" records and because the VA's disability

---

[1] The VA "do[es] not add the individual percentages of each condition to determine [the] combined rating.  [It] use[s] a combined rating table that considers the effect from the most serious to the least serious conditions."  (Tr. 831.)

standard is disparate from the Commissioner's.  (Tr. 22, 25.)   Accordingly, the ALJ properly considered the VA's decision and substantial evidence supports the ALJ's decision not to accord great weight to the VA's determination of disability.  *See Hacia*, 601 F. App'x at 786; *Adams v. Comm'r of Soc. Sec.*, 542 F. App'x 854, 856-57 (11th Cir. 2013); *Pearson v. Astrue*, 271 F. App'x 979, 981 (11th Cir. 2008).

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1.  The decision of the Commissioner is **AFFIRMED**.

2.  The Clerk of Court is directed to enter final judgment in favor of the Commissioner and close the case.

**DONE** and **ORDERED** in Tampa, Florida, on February 17, 2016.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record